# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ANTHONY E. PROCTOR, | ) | Civil Action No. 2: 13-cv-1284 |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | United States Magistrate Judge |
| v. | ) | Cynthia Reed Eddy |
| | ) | |
| SGT. BURKE, C. O. HART, CAPT. BEYERS, HEARING EXAMINER P. McKISSOCK, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently pending is the Motion to Dismiss filed by Defendants, with brief in support (ECF Nos. 9 and 10) and Plaintiff's brief in opposition (ECF No. 12). For the reasons that follow, the Motion will be denied.[1]

### Factual Background

Plaintiff, Anthony E. Proctor, is a state prisoner committed to the custody of the Pennsylvania Department of Corrections and at all times relevant to this lawsuit was incarcerated at SCI-Mercer. Plaintiff originally filed his Complaint in the Court of Common Pleas of Mercer County. Defendants removed the action to this Court and thereafter filed a Motion to Dismiss. In response, Plaintiff filed an Amended Complaint, which remains the operative complaint (ECF No. 8). Named as Defendants are the following SCI-Mercer officials and employees: Sgt. Burke, C.O. Hart, Capt. Beyers and Hearing Examiner P. McKissock.

---

[1] All parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* 28 U.S.C. § 636 et seq.; Consent to Trial / Jurisdiction by United States Magistrate Judge (ECF Nos. 6 and 7).

1

Plaintiff alleges that Defendants Burke, Hart, and Beyers retaliated against him for invoking his "right not to incriminate himself" when they unreasonably stopped and pat searched him, issued him two misconducts reports, and placed him in the restricted housing unit ("RHU"). Plaintiff also alleges that the rulings of the hearing examiner, Defendant McKissock, were "retaliatory actions" designed to "further the 'retaliatory conduct' of the correction officers: Sgt. Burke & C.O. Hart and Capt. Beyers."

Plaintiff further claims that Defendants each violated his "Constitutional Rights to due process of the law and to be free from cruel and unusual punishment in regard to Department of Correction's administrative custody procedures . . ."

According to the Amended Complaint, approximately three (3) weeks before the incidents complained of in this lawsuit occurred, inmate Keith Davis was punched in the face and knocked on his back by an unidentified assailant while in the prison yard. A rumor was circulating that Plaintiff was the person who had punched inmate Davis. About one (1) week after the fight in the prison yard, Defendant Burke ordered Plaintiff out of his cell and asked him if he knew anything about the assault on inmate Davis. Plaintiff replied, "I don't know what you are talking about. I have no comment about Keith, but what do you see in me that makes you think that I will give you statements incriminating myself to you." Amended Complaint. Defendant Burke then ordered Plaintiff back to his cell.

About a week later, on July 27, 2011, Plaintiff attempted to enter the prison yard during an unauthorized time. He was told to return to his cell and wait until his unit was called, which he did. Upon returning to the prison yard at the appropriate time, Plaintiff was ordered to step aside for a pat search. He was ordered numerous times to stand still and keep his arms up. Plaintiff did not comply as he kept turning around and eventually put his arms down. According

to the Amended Complaint, during the pat search, Office Petre said to Plaintiff, "So you like to punch people in the face?" To which Plaintiff replied, "I don't know what you are talking about. I have no comment about acts of violence." Amended Complaint. During the pat down, Plaintiff became verbally abusive and eventually was placed in handcuffs. He was taken to RHU and placed in administrative custody pending a misconduct hearing. He was charged with (i) threatening an employee, (ii) using abusive, obscene or inappropriate language to an employee, (iii) presence in an unauthorized area; and (iv) refusing to obey an order. (Misconduct B 172125.)

Later that evening, Defendant Byers came to Plaintiff's cell while in the RHU and ordered him to put his hands through the wicket so that his hands could be photographed.[2] Although Plaintiff held his hands up, he refused to let them be photographed. He subsequently was issued a misconduct for refusing to obey an order. (Misconduct B 288794.)

On August 3, 2011, Hearing Examiner McKissock conducted a misconduct hearing on Misconduct Report B 172125. At the hearing, Plaintiff stated that he felt "set up." Defendant McKissock continued the hearing so that she could view a video of the incident. On August 10, 2011, the hearing was resumed and Defendant McKissock rendered her decision, finding Plaintiff guilty of (i) threatening an employee; (ii) using abusive, obscene or inappropriate language to an employee; and (iii) refusing to obey an order. Plaintiff was found not guilty on the charge of presence in an unauthorized area. Plaintiff was sanctioned to 150 days in disciplinary custody, effective July 27, 2011.

---

[2] The Amended Complaint states that Defendant Beyers demanded the photographs "approximately one week" after C.O. Petre questioned the Plaintiff in the prison yard. However, Misconduct B 288794 clearly states that the incident occurred on July 27, 2011 at "21:15 hours," which is approximately three hours after the first incident in the prison yard occurred.

3

That same day, Defendant McKissock also conducted a hearing on Plaintiff's Misconduct B 288794. At the hearing, Plaintiff stated that he did not need to testify against himself and that if Defendants wanted a picture of his hands, they needed a court order. Defendant McKissock rendered her decision, finding Plaintiff guilty and sanctioning him to 30 days in disciplinary custody, concurrent with the sanction issued for Misconduct B 172125.

Plaintiff claims that no justification existed for the pat search or the order to photograph his hands, and that these orders, as well as his misconducts, were issued in retaliation for Plaintiff "invoking his 5th Amendment right to remain silent (no comment) in response to interrogation initiated by Sgt Burke and C.O. Petre. . . ." Amended Complaint. Plaintiff also claims that the Hearing Examiner violated "his rights to due process of law and to be free from cruel and unusual punishment where the hearing examiner attempted to manipulate the record . . . to mask the fact that the 'stop and detain' was not for a pat search but rather for retaliatory conduct against the plaintiff to further investigate him . . . . " Amended Complaint.

In their motion to dismiss, Defendants argue that Plaintiff (i) has failed to state a claim of retaliation, (ii) has failed to state a claim under the Due Process Clause of the Fourteenth Amendment, and (iii) has failed to state an Eighth Amendment violation. The Court will address these arguments in seriatim.

**Standard of Review**

A.   <u>Pro Se Litigants</u>

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor

syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).[3] *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100,

---

[3] The Court of Appeals for the Third Circuit has explained the liberal construction of pro se pleadings, as follows:

> The federal rules do not adhere to the ancient principle that a pleading must be construed most strongly against the pleader. Nor do the federal courts require technical exactness or draw refined inferences against the pleader; rather, they make a determined effort to understand what he is attempting to set forth and to construe the pleading in his favor, whenever justice so requires. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law. In these cases, technical deficiencies in the complaint will be treated leniently and the entire pleading will be scrutinized to determine if any legally cognizable claim can be found within it.

*Lewis v. Attorney General of U.S.,* 878 F.2d 714, 722 (3d Cir. 1989) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1286, at 381-84 (1969)).

103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

Because Plaintiff is a pro se litigant, this Court may consider facts and make inferences where it is appropriate.

B. <u>Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard</u>

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied,* -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly,* and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal,*

556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**Discussion**

A.  <u>Retaliation</u>

"Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution . . . ." *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990). To state a claim for retaliation, an inmate must show that (1) he engaged in some type of constitutionally protected conduct; (2) he was subject of an adverse action by prison "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) there was a causal relationship between the two.[4] *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000)).

Once a plaintiff has made a prima facie case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser,* 241 F.3d at 334.

In moving to dismiss this claim, Defendants argue that even assuming Plaintiff could satisfy the first two elements of a prima facie retaliation claim, he fails to establish the third required element, causation. The third *Rauser* prong requires a plaintiff to establish a causal link

---

[4] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997)).

between the exercise of his constitutional rights and the adverse action taken against him. The Court employs a burden-shifting regime to determine whether a causal link exists. The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. *See id*. (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 87 (1977)). The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity. *See id.* If defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action. *See id.* at 334.

Defendants ask the Court to dismiss the retaliation claim because the finding of guilt against Plaintiff on the charged misconduct is sufficient to show that the issuance of the misconduct was reasonably related to a legitimate penological interest, and that Plaintiff would have been charged regardless of any protected activity he was engaged in. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002); *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994) (concluding that, because the finding of guilt in the inmate's disciplinary hearing was based on "some evidence," that finding "essentially checkmates his retaliation claim"). However, the United States Court of Appeals for the Third Circuit recently has held that the better course of action is to allow such claims to proceed and not apply the burden-shifting aspect of the retaliation standard at the motion to dismiss stage. *See Bond v. Horne,* --- F. App'x -----, 2014 WL 278526, at *3 (3d Cir. Jan. 27, 2014). For these reasons, the Court will deny Defendants' motion to dismiss with respect to Plaintiff's retaliation claim.

B.  Due Process

To the extent Plaintiff casts the filing of misconduct charges against him and the procedures employed during his misconduct hearings as a due process violation, the Court will also allow this claim to proceed at this juncture. In analyzing any procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir.2000) (citing *Fuentes v. Shevin,* 407 U.S. 67 (1972)). Once it is determined that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. *Id*. (citing *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972)).

> In the case of prison inmates, the following principles apply:
>
> [i]n *Sandin v. Conner*, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protect by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an <u>'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life</u>.' ... In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

*Shoats,* 213 F.3d at 143–44 (citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. Prison disciplinary proceedings may, however, constitute a denial of due process in the context of a civil rights

action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right. *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002). In *Allah v. Seiverling,* 229 F.3d 220 (3d Cir. 2000), our court of appeals stated:

> *Sandin* instructs that placement in administrative confinement will generally not create a liberty interest. Retaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest. [G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.

*Seiverling*, 229 F.3d at 224 (internal citations and quotation marks omitted).

The Court recognizes that discovery may well reveal that the alleged conduct of Defendants does not give rise to a due process claim, but at this stage of the litigation, the allegations of the Amended Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor. For these reasons, Plaintiff's due process claim will also be permitted to proceed.

C.  <u>Cruel and Unusual Punishment / Excessive Force Claim</u>

Plaintiff's Eighth Amendment claim is as follows:

> Officers shoved the Plaintiff face forward onto the ground while his hands were cuffed behind his back then pounced onto his back and neck with their knees and when officers carried the Plaintiff by his limbs toward the A.C. Status cell-block with his hands cuffed behind his back and when officer Hart shoved the Plaintiff's head against the floor of the medical cart crushing his eyeglasses against his face and the floor of the medical cart.

Pl's Br. in Opp'n at ¶ 8.

In the context of an excessive force claim, the core judicial inquiry of whether the measure taken inflicted unnecessary and wanton pain and suffering is that set out in *Whitley v. Alberts*, 475 U.S. 312 (1986): "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S.

11

1, 7 (1992). In answering this question, a court's analysis "must be driven by the extent of the force and the circumstances in which it [was] applied[,] not [merely] by the resulting injuries" to a plaintiff. *Smith,* 293 F.3d at 648. In determining whether a defendant has used excessive force in violation of the Eighth Amendment, courts look to several factors including: "(1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts to temper the severity of the forceful response." *Brooks v. Kyler,* 204 F.3d 102, 106 (3d Cir. 2000) (internal quotations and citation omitted). The extent of any injuries that an inmate suffers is relevant, but "does not end" this analysis. *Hudson,* 503 U.S. at 7. Consideration of these factors permit a court to make inferences concerning "whether the use of force could plausibly have been thought necessary" or whether the circumstances show "such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

Defendants argue that they had to use force when they were confronted with Plaintiff's refusal to cooperate during the pat search and his refusal to walk to the RHU unit. The Court finds that Plaintiff's allegations are sufficient to state a plausible claim for relief for purposes of a motion to dismiss. The extent of force that was applied and whether it was applied in a good faith effort to maintain discipline is something that can be reviewed at the summary judgment stage after the parties have conducted discovery.

## Conclusion

For all the foregoing reasons, the Motion to Dismiss filed by Defendants will be denied. An appropriate Order follows.

**AND NOW**, this 19th day of May, 2014,

It is hereby **ORDERED** that the Motion to Dismiss filed by Defendants is **DENIED**. In accordance with Federal Rule of Civil Procedure 12(a)(4)(A), Defendants shall file a responsive pleading on or before June 2, 2014.

s/ Cynthia Reed Eddy  
Cynthia Reed Eddy  
United States Magistrate Judge

cc: ANTHONY E. PROCTOR
     SCI-Benner Township
     301 Institution Drive
     Bellefonte, PA 16823

     Yana L. Warshafsky
     Office of the Attorney General
     Email: ywarshafsky@attorneygeneral.gov